UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | |
|---|---|
| JANET E. MEADOWS,<br><br>Plaintiff,<br><br>v.<br><br>BLUE RIDGE COMMUNITY COLLEGE,<br><br>Defendant. | C.A. NO. 1:19-CV-00251-MR-WCM |

**FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff, Janet E. Meadows, and files this First Amended Complaint as a matter of course pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure.

1. This court has jurisdiction over the federal cause of action brought herein pursuant to 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5.

2. On August 28, 2019 the Defendant gave notice of removal of the state law claims from the Superior Court of Buncombe County, North Carolina to the District Court for the Western District of North Carolina.

3. Plaintiff filed a Charge of Employment Discrimination against the Defendant with the United States Equal Employment Opportunity Commission ("EEOC") on or about March 20, 2019 alleging an on-going, continuing and related series of acts of discrimination against her by the Defendant in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq*. ("ADA"), on the basis of the events described herein. That Charge was denoted by the EEOC as Charge No. 430-2019-01377.

4. On April 4, 2019 the EEOC mailed a Notice of Rights to Plaintiff in Charge No. 430-2019-01377.

5. Plaintiff now brings this civil action within 90 days of her receipt of the EEOC Notice of Rights listed above.

## FACTS

6. Plaintiff is a citizen and resident of Buncombe County, North Carolina.

7. Defendant is a Community College headquartered in Henderson County, North Carolina. Defendant conducts educational and job training activities in Henderson County and Transylvania County, North Carolina.

8. Defendant employs in excess of 201 employees, conducts business affecting commerce, and is an "employer" and "covered entity" as those terms are defined and used in the ADA.

9. Plaintiff is an instructor in the fields of Business and Business Computing Technology who has worked as a part-time instructor with the Defendant from 2014 to 2018.

10. Plaintiff has one or more physical disabilities as that term is defined and used in the ADA.

11. Plaintiff's disabling conditions are Anthrogryposis, which is a congenital defect affecting the spine and all four extremities, and severe and chronic Crohn's Disease.

12. These conditions adversely affect Plaintiff's mobility, dexterity, strength and energy levels, and substantially limit one or more of her major life activities. The photo attached as Attachment A to this Complaint is a true and accurate representation of the Plaintiff's appearance as affected by her physical disabilities.

13. Plaintiff is a "qualified individual with a disability" as that term is defined and used in the ADA, in that Plaintiff is an individual with a disability who is able to perform the essential functions of her job with or without reasonable accommodation

14. Defendant was aware of Plaintiff's disabilities and in the past has taken certain limited actions to accommodate the Plaintiff's disabilities in the workplace.

15. However, despite the fact that the Defendant has in the past taken certain limited actions to accommodate Plaintiff's disabilities, the Defendant has repeatedly subjected Plaintiff to other adverse employment decisions and conditions on the basis of or because of her disability.

16. Despite knowledge of her disabilities and her limitations, starting in the fall of 2016 the Defendant assigned Plaintiff to early morning (8:00 a.m.) classes at one of the College's satellite campuses. The campus was approximately 50 miles from her residence.

17. The Defendant made these assignments without consulting with the Plaintiff. It is the normal practice at the College to consult with Instructors prior to assignment to classes.

18. These assignments created multiple problems for Ms. Meadows related to her disabilities, including but not limited to tardiness and absences due to the early morning nature of assignments.

19. When Plaintiff complained about these assignments to her Dean and requested her schedule be changed as an accommodation of her disabilities, she was told that her complaints and request for accommodation on this issue would likely result in her receiving less classes to teach in the future.

20. Following these complaints and request for an accommodation, the Dean again assigned Plaintiff to the same problematic class schedule without any consultation, and an online class, which she had been slated to teach in the upcoming semester, was removed from her without explanation.

21. In the fall of 2017, Plaintiff applied for the full-time position of Lead Instructor in her Department at the College. This position would have represented a significant advancement for her career as well as a significant increase in compensation and benefits.

22. Plaintiff was interviewed for this position on November 6, 2017.

23. During the interview process for that position, the Interview Committee, which included the Dean who had previously taken the adverse class assignment actions against her, repeatedly asked her about her ability and willingness to work at a satellite campus and to teach 8:00 a.m. classes.

24. The Dean, and upon information and belief the entire Committee, was well aware that these were the exact issues on which Plaintiff had tried to seek accommodation from the College in the past.

25. The Committee asked this question at the start of the interview and its use was extremely upsetting to Plaintiff and made it difficult for her to concentrate on the rest of the interview.

26. Upon information and belief, this tactic was intentional and used to insure that Plaintiff did not succeed in getting past the initial interview stage.

27. Immediately following this interview, the Plaintiff complained to and attempted to file a grievance with the Defendant's Human Resources Department concerning the interview and the actions of the Dean, but was denied the right to do so.

28. Plaintiff was not selected for the position.

29. Upon information and belief, following this discriminatory interview process, the position was given to a non-disabled candidate.

30. Plaintiff's qualifications were either equal to or superior to the successful candidate. Plaintiff holds two Master's Degrees.

31. Upon information and belief, the non-disabled candidate who was hired was not and has not been required to teach or attend 8:00 a.m. classes.

32. On March 9, 2018, Plaintiff received a copy of an e-mail from her Departmental Chair (which was sent to her by accident) in which the Departmental Chair was requesting the Dean to remove Plaintiff from the schedule of all classes in the future and that she not be given any future contracts for employment.

33. The reason given for this action by the Chair was Plaintiff's "absenteeism" and "availability to teach ..... class".

34. On or about March 20, 2018 the Defendant notified the Plaintiff that it would not be renewing any of her existing instructional contracts for the upcoming academic year, thus ending her employment with the Defendant.

35. The Defendant also attempted to cancel the Plaintiff's already issued contract to teach a class in the 2018 summer session.

36. The Defendant was legally obligated to comply with the existing 2018 summer session contract.

37. Following a complaint and grievance to the President of the College concerning the non-renewal of her instructional contracts, the 2018 Summer Session contract was re-instated, but the College did not re-new nor offer Plaintiff any courses or a contract for the fall 2018 semester.

38. As set out above, any and all issues with Plaintiff's absenteeism and availability to teach classes for the College were directly related to Plaintiff's disabilities and were known by the College to be so related.

39. At no point prior to making this employment ending decision to have her removed from the teaching schedule did the Department Chair, the Dean or anyone else associated with the College engage in any level of an interactive or iterative process with Plaintiff to determine how to best address these issues in light of her known disabilities.

40. Further, the Department Chair was a member of the Interview Committee that had blatantly used Plaintiff's physical limitations as a means to disqualify her for the earlier promotion.

41. On or about September 26, 2018, Plaintiff filed a Charge of Employment Discrimination with the United States Equal Employment Opportunity Commission based on the Departmental Chair's email and the non-renewal of her contract of employment by the Defendant as set out above. This Charge was denoted as Charge No. 430-2018-03286.

42. However, due to a delay in the availability of an EEOC intake officer to meet with Plaintiff, this Charge was filed shortly after the expiration of the 180 day period of limitation for filing such a Charge on the basis of the non-renewal of her contract of employment which was, at the time of the filing of Charge No. 430-2018-03286, the latest and last act of discrimination against the Plaintiff by the Defendant. The Charge was ultimately dismissed on the grounds of untimeliness by the EEOC on October 10, 2018.

43. In addition to attempting to file a Charge of Employment Discrimination with the EEOC, Plaintiff also has attempted to complain about and in some cases internally grieve the adverse, discriminatory and retaliatory actions by the College.

44. With the exception of her demand that the College honor the existing 2018 summer session contract, the Defendant has met each of these attempts by the Plaintiff to seek an internal remedy with procedural disqualifications and/or outright denials of all such grievances.

45. At one point following an internal complaint to Defendant's President, it was suggested that Plaintiff should join the Defendant's Inclusion and Diversity Committee. When she inquired about this possibility the President stated that those appointments had already been made for the year and she declined to make any additional appointments. It was suggested to the Plaintiff that she should join the NAACP instead.

46. These actions by the College in response to Plaintiff's legitimate complaints have themselves been part and parcel of the College's pattern and practice of consistent, repeated, related, intentional and on-going acts of discrimination against Plaintiff on the basis of her disabilities.

47. The last such act of discrimination by the College in this on-going series of discriminatory acts was the denial by the President of the College, on October 17, 2018, of a grievance Plaintiff had attempted to file with the Board of Trustees of the College concerning all of the discriminatory and retaliatory actions set out above.

48. Plaintiff filed EEOC Charge No. 430-2019-01377 within 180 days of this last act of discrimination by the Defendant.

49. This act of October 17, 2018 by the President denying the Plaintiff's legitimate grievances was also in retaliation for the Charge of Employment Discrimination the Plaintiff had filed in September 2018.

50. The Grievance Policy of the Defendant is intended to provide employees with a full and fair process of having their Grievances heard and resolved, and should be seen as an important safeguard against discriminatory personnel actions within BRCC.

51. The denial of such a Grievance by the President of BRCC on a discriminatory and/or retaliatory basis and in furtherance of discriminatory actions by the Defendant is harmful to an employee and would dissuade a reasonable employee from making or supporting an initial charge or charges of discrimination.

**FIRST CAUSE OF ACTION**
**(Violation Of ADA)**

52. Plaintiff re-alleges and incorporates herein all allegations set out in paragraphs 1 through 51 above.

53. Defendant has engaged in a series of related, intentional, on-going, and illegal discriminatory and retaliatory actions on the basis of Plaintiff's disabilities as alleged herein. These actions were taken by the Defendant with malice and/or a reckless disregard for the federally protected rights of the Plaintiff.

54. Defendant's actions as alleged herein violate the provisions of 42 U.S.C. § §12112 and 12203.

**SECOND CAUSE OF ACTION**
**(Unlawful Employment Discrimination And Termination In Violation Of The Public Policy Of The State Of North Carolina)**

55. Plaintiff re-alleges and incorporates herein all allegations set out in paragraphs 1 through 54 above.

56. As set out in North Carolina Equal Employment Practices Act (N.C. Gen Stat. § 143-422.1 *et seq.*), it is the stated public policy of the State of North Carolina:

> [T]o protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

57. Defendant's action failing to hire Plaintiff for the full-time instructor's position as set out in paragraphs nos. 20-30 above, and the termination of her work/employment with the Defendant as set out paragraphs nos. 31 – 39 above, all on the basis of her handicap condition, were each in violation of the stated public policy of the State of North Carolina and were, therefore, unlawful.

58. As set out in Chapter 168A of the North Carolina General Statutes, entitled "North Carolina Persons with Disabilities Protection Act", it is the stated public policy of the State of North Carolina:

> (a) The purpose of this Chapter is to ensure equality of opportunity, to promote independent living, self-determination, and economic self-sufficiency, and to encourage and enable all persons with disabilities to participate fully to the maximum extent of their abilities in the social and economic life of the State, to engage in remunerative employment, to use available public accommodations and public services, and to otherwise pursue their rights and privileges as inhabitants of this State.
>
> (b) The General Assembly finds that: the practice of discrimination based upon a disabling condition is contrary to the public interest and to the principles of freedom and equality of opportunity; the practice of discrimination on the basis of a disabling condition threatens the rights and proper privileges of the inhabitants of this State; and such discrimination results in a failure to realize the productive capacity of individuals to their fullest extent.
>
> N.C. Gen. Stat. § 168A-2

59. Further, it is the stated public policy of the State of North Carolina to prohibit the following discriminatory actions by employers in North Carolina:

> (a) Discriminatory practices. -- It is a discriminatory practice for:
>
> (1) An employer to fail to hire or consider for employment or promotion, to discharge, or otherwise to discriminate against a qualified person with a disability on the basis of a disabling condition with respect to compensation or the terms, conditions, or privileges of employment;
>
> N.C. Gen. Stat. § 168A-5
>
> (a) No employer shall discharge, expel, refuse to hire, or otherwise discriminate against any person or applicant for employment, nor shall any employment agency discriminate against any person, nor shall a labor organization discriminate against any member or applicant for membership because the person has opposed any practice made a discriminatory practice by this Chapter or because the person has testified, assisted or participated

in any manner in proceedings under this Chapter.

N.C. Gen. Stat. § 168A-10

60. Defendant's action failing to hire Plaintiff for the full-time instructor's position as set out in paragraphs nos. 20-30 above, and the termination of her work/employment with the Defendant as set out in paragraphs nos. 31 – 39 above, and the retaliatory denial of her Grievance, all on the basis of her disabling condition, were each in violation of the stated public policy of the State of North Carolina and were, therefore, unlawful.

**THIRD CAUSE OF ACTION**
**(Breach of Employment Contract)**

61. Plaintiff re-alleges and incorporates herein all allegations as set forth in Paragraphs 1-60 above.

62. A valid and enforceable contract of employment existed between the Plaintiff and Defendant.

63. The material terms of that contract included all provisions of North Carolina law applicable to such contracts, including, *inter alia*, the provisions of N.C. Gen Stat. § 143-422.1 *et seq*. and Chapter 168A of the General Statutes of North Carolina.

64. Defendant's action failing to promote Plaintiff and non-renewing Plaintiff's contract of employment and therefore terminating Plaintiff 's work with the Defendant on the basis of Plaintiff's handicap condition were in violation of the specific terms and provisions of N.C. Gen Stat. § 143-422.1 *et seq*. cited above.

65. These violations of N.C. Gen Stat. § 143-422.1 *et seq*. represent a breach of the contract of employment between the Plaintiff and the Defendant.

66. Defendant's action failing to promote Plaintiff, failing to renew Plaintiff's contract of employment or to re-hire Plaintiff and therefore terminating Plaintiff's work with the Defendant, and Defendant's retaliation against Plaintiff, all on the basis of Plaintiff's disabling condition and/or her opposition to Defendant's discriminatory practices, were in violation of the specific terms and provisions of Chapter 168A of the North Carolina General Statutes cited above.

67. These violations of Chapter 168A of the North Carolina General Statutes represent a breach of the contract of employment between the Plaintiff and the Defendant.

68. The breaches set out herein are material and continuing in nature.

69. Prior to these breaches by the Defendant, Plaintiff performed all duties required of her under the terms of the contract.

70. Plaintiff has suffered harm and damages in the form of unpaid wages and benefits and lack of continued employment, and will continue to suffer such harm and damages in an amount in excess of $25,000 due to Defendant's breaches of the contract.

WHEREFORE, the Plaintiff prays this Court to provide the following relief:

1. Enter an injunction directing the Defendant to place the Plaintiff in the full-time position of employment denied her in November 2017 or an equivalent position or, should the court determine that Plaintiff is not entitled to this remedy, reinstate Plaintiff to her former contract of employment with the Defendant;

2. Award a judgment to the Plaintiff in an amount sufficient to compensate the Plaintiff for all back pay and all employment benefits due from the date of her denial of the full-time position to the date of her placement in that position or an equivalent position by this court or, should the court determine that Plaintiff is not entitled to this remedy, award a judgment in an amount sufficient to compensate Plaintiff for all back pay and benefits due from the date of the non-renewal of her contract of employment to the date of her re-instatement to that contract;

3. Award to Plaintiff a sum sufficient to make Plaintiff whole due to the damages sustained as a result of the Defendant's breach of contract;

4. Award to Plaintiff exemplary or punitive damages sufficient to deter Defendant from all such intentional discriminatory actions in the future pursuant to 42 U.S.C. §1981a or other applicable provision of law;

5. Award to the Plaintiff all pre-judgment and post-judgment interest on all amounts so awarded as may be allowed by law;

6. Award to the Plaintiff reasonable attorney fees and costs in this action as may be allowed by 42 U.S.C. § 200e-5 or other applicable provision of law;

7. Such other and further relief as the Court shall determine to be necessary and appropriate.

Plaintiff demands Trial by Jury

This the 2nd day of October 2019.

*s/John C. Hunter*
John C. Hunter (NC State Bar No.: 13197)
Attorney at Law
One North Pack Square
Suite 421
Asheville, North Carolina 28801
Tel: (828) 281-1940
Email: johnhunter@jchlawfirm.com

Certificate of Service

I hereby certify that I have this date electronically filed the foregoing with the Clerk of Court using the CM/ECF system that will automatically serve the following:

Matthew J. Gilley
Brian N. McCracken
Ford & Harrison, LLP
100 Dunbar St. Ste. 300
Spartanburg, South Carolina 29306
*Attorneys for the Defendant*

This the 2nd day of October 2019.

*s/John C. Hunter*
John C. Hunter

Attachment A

