IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:19 CV 251

| | |
|---|---|
| JANET E. MEADOWS ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> BLUE RIDGE COMMUNITY ) <br> COLLEGE, ) <br> ) <br> Defendant. ) <br> _____) | MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 10), which has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' arguments, the record, and applicable authority, the undersigned respectfully recommends that the Motion be granted in part.

I. **Factual Background**

Plaintiff's First Amended Complaint (Doc. 9) alleges as follows:

Defendant Blue Ridge Community College ("Defendant") is a community college located in Henderson County that conducts educational and job training activities in Transylvania County and Henderson County. Pl's Am. Compl. (Doc. 9) at ¶ 7.

1

Between 2014 and 2018, Plaintiff Janet E. Meadows ("Plaintiff") worked for Defendant as a part-time instructor in the fields of business and business computing technology. Id. at ¶ 9.

Plaintiff suffers from Anthrogryposis, a disabling condition affecting her spine and extremities, and from severe and chronic Crohn's disease. Id. at ¶ 11. These conditions adversely affect Plaintiff's mobility, dexterity, strength, and energy levels, and substantially limit one or more life activities. Id. at ¶ 12.

Defendant provided Plaintiff with some accommodations for these disabilities.[1] Id. at ¶ 14.

In the fall of 2016, Defendant assigned Plaintiff to teach classes that began at 8:00am at one of Defendant's satellite campuses located approximately fifty miles from Plaintiff's residence. Id. at ¶ 16. Though Defendant's practice was to consult instructors on class assignments, Defendant did not consult Plaintiff before making these assignments to her. Id. at ¶ 17.

Due to her disabilities, Plaintiff had difficulty arriving on time for these classes and was often absent or tardy. Id. at ¶ 18.

---

[1] The First Amended Complaint does not specify what accommodations Defendant provided or when those accommodations were provided.

On an unspecified date, Plaintiff complained to her Dean about the early morning class assignments and requested that her assignments be changed. Id. at ¶ 19. In response, Plaintiff was told that her "request for accommodation on this issue would likely result in her receiving less classes to teach in the future." Id. Following this exchange, Plaintiff was assigned to the same class schedule. Also, an online class that Plaintiff had been scheduled to teach was removed from her schedule. Id. at ¶ 20.

In the fall of 2017, Plaintiff applied for the position of Lead Instructor in her department. This position carried increased compensation and benefits and "would have represented a significant advancement for her career." Id. at ¶ 21.

On November 6, 2017, Plaintiff was interviewed by a committee for this position. Id. at ¶ 22. At the beginning of the interview, Plaintiff was repeatedly questioned about her ability and willingness to work at a satellite campus and to teach 8:00am classes. Plaintiff was upset by this questioning and found it difficult to concentrate for the remainder of the interview. Id. at ¶¶ 23, 25.

Plaintiff attempted to file a grievance with Defendant's Human Resources Department immediately following the interview but was denied the right to do so.[2] Id. at ¶ 27.

Plaintiff was not selected for the position of Lead Instructor. Id. at ¶ 28. The individual who was hired was not disabled and was not required to teach 8:00am classes. Id. at ¶¶ 29 & 31.

On March 9, 2018, Plaintiff inadvertently received a copy of an email from her Department Chair to the Dean requesting that Plaintiff be removed from her classes in the future and not be awarded any contracts for work in the future. The email cited Plaintiff's absenteeism and teaching availability. Id. at ¶¶ 32-33.

On March 20, 2018, Defendant notified Plaintiff that her teaching contracts would not be renewed for the upcoming academic year. Id. at ¶ 34.

Defendant also attempted to cancel a contract for Plaintiff to teach during the summer of 2018.[3] Id. at ¶ 35.

---

[2] The First Amended Complaint does not provide any further details regarding Plaintiff's attempt to file this grievance.

[3] The First Amended Complaint does not provide a specific date for this event.

Subsequently, Plaintiff filed a complaint and grievance with Defendant's President concerning the nonrenewal of her teaching contracts.[4] Id. at ¶ 37.

Plaintiff's summer teaching contract was later reinstated, but Defendant did not offer Plaintiff the opportunity to teach in the fall of 2018. Id.

On September 26, 2018, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") ("September 2018 Charge"), based on the March 9, 2018 email and the non-renewal of her teaching contracts for the fall of 2018. Id. at ¶ 41.

On October 10, 2018, the EEOC dismissed the September 2018 Charge as untimely because it was filed more than 180 days after the last act of discrimination alleged by Plaintiff. Id. at ¶ 42.

Plaintiff also attempted to file additional internal grievances with Defendant, all of which were denied. Id. at ¶¶ 43-44. Plaintiff alleges that the final denial occurred on October 17, 2018, when Defendant's President denied a grievance that Plaintiff had attempted to file with Defendant's Board of Trustees. Id. at ¶ 47.

---

[4] The First Amended Complaint does not provide the date on which this grievance was filed.

On March 20, 2019, Plaintiff filed a second charge with the EEOC ("March 2019 Charge"). Id. at ¶ 3. The March 2019 Charge was dismissed as untimely by the EEOC in April of 2019.[5]

## II. Procedural Background

On July 2, 2019, Plaintiff filed her Complaint in the Superior Court of Henderson County, North Carolina. (Doc. 1-1).

Defendant removed the case on August 28, 2019. (Doc. 1).

Defendant filed a motion to dismiss the Complaint and a supporting brief on September 11, 2019. (Docs. 5 & 6). Plaintiff responded on September 25, 2019 and filed her Amended Complaint on October 2, 2019. (Docs. 7 & 9).

Defendant filed its Motion to Dismiss Plaintiff's First Amended Complaint and a supporting brief on October 16, 2019. (Docs. 10 & 11). Plaintiff subsequently responded and Defendant replied. (Docs. 12 & 13).

## III. Legal Standard

In a motion made pursuant to Rule 12(b)(6), the central issue is whether the complaint states a plausible claim for relief. See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). In that context, the court accepts the allegations

---

[5] Defendant has submitted a copy of the Notice of Right to Sue that was issued by the EEOC in response to this charge. (Doc. 10-2). This document may be considered in relation to Defendant's Motion. See Witthohn v. Fed. Ins. Co., 164 Fed. App'x. 395, 396-97 (4th Cir. 2006) ("While extrinsic evidence is generally not to be considered at the Rule 12(b)(6) stage, 'a court may consider … documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed.'").

6

in the complaint as true and construes them in the light most favorable to the plaintiff. See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 192. The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.

## IV. Discussion

Plaintiff asserts a claim under the Americans with Disabilities Act ("ADA") 42 U.S.C. §12101 as well as state law claims for wrongful discharge in violation of public policy and breach of contract.

### A. ADA Claim

Plaintiff alleges that Defendant violated both the anti-discrimination provisions and the anti-retaliation provisions of the ADA. Pl.'s Am. Compl. (Doc. 9) at ¶¶ 54-55.

In the Motion, Defendant argues that Plaintiff's ADA claim is barred because the September 2018 Charge and the March 2019 Charge were untimely.

Plaintiff does not appear to dispute that the September 2018 Charge was untimely but contends that the March 2019 Charge was timely because the last act of discrimination by Defendant occurred on October 17, 2018, when Defendant's President denied her internal grievance.

7

### 1. Exhaustion of Administrative Remedies under the ADA

The Fourth Circuit previously held that "a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009), abrogated by Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (2019)). The exhaustion of administrative remedies in the context of an ADA claim was also considered to be a jurisdictional issue by some courts. See Williams v. N.C. Admin. Office of the Courts, 364 F. Supp. 3d 596, 601 (E.D.N.C. 2018)("[A] district court has subject-matter jurisdiction over an ADA claim only if the plaintiff exhausted administrative remedies by filing an EEOC charge concerning the alleged discrimination before filing suit.").

The Supreme Court recently determined, though, that "Title VII's charge-filing requirement is not of jurisdictional cast." Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (2019). This finding, however, "did not soften the administrative procedural requirements of Title VII," Abadi v. Mecklenburg Cty. Gov't, No. 3:17–CV–00435–FDW–DCK, 2019 WL 2546732, at *3 (W.D.N.C. June 20, 2019)(citing Fort Bend Cty., 139 S. Ct. at 1851)); courts still enforce the charge-filing requirement as a claim-processing rule if the defense is raised properly. Fort Bend Cty., 139 S. Ct. at 1849)(citing Eberhart v. United States, 546 U.S. 12, 19, (2005) (per curiam)).

While Ford Bend Cty. involved a Title VII claim, the rule announced there also applies to Plaintiff's ADA claim. See Stewart v. Jones Util. & Contracting Co. Inc., No. 19-14115, 2020 WL 1313636, at *1 (11th Cir. Mar. 19, 2020) (citing Fort Bend Cty., 139 S. Ct. at 1846, 1849, 1851 (2019)) (requirement that plaintiff exhaust her administrative remedies with the EEOC before filing a complaint under Title VII or the ADA "is a mandatory claims-processing rule, not a jurisdictional prerequisite[.]"); Cowgill v. First Data Techs., Inc., No. CV ADC-19-2565, 2020 WL 551913, at *3 (D. Md. Feb. 4, 2020) ("Though the Supreme Court in Davis was addressing a Title VII Charge, plaintiffs must follow identical EEOC procedures when bringing a Charge of Discrimination under both Title VII and the ADA.").

### 2. The March 2019 Charge

#### a. Filing Deadline and EEOC Determination

"The ADA requires a plaintiff to file a charge of discrimination with the EEOC within 180 days of the alleged adverse employment action." Sexton v. Skyline Membership Corp., No. 5:16-CV-00044-RLV-DSC, 2017 WL 1386019, at *2 (W.D.N.C. Apr. 12, 2017) (citing 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(e)(1)).

As noted, in this case, the EEOC dismissed the March 2019 Charge as untimely. Plaintiff argues, though, that the Court is not bound by the EEOC's determination. Pl.'s Resp (Doc. 12) at 6; see also Newson v. Prinston Pharm.,

Inc., No. 3:18-CV-269-RJC-DCK, 2019 WL 1852690, at *5 (W.D.N.C. Mar. 28, 2019), report and recommendation adopted, No. 3:18-CV-269-RJC-DCK, 2019 WL 1795950 (W.D.N.C. Apr. 24, 2019).

### b. Basis for the March 2019 Charge

The March 2019 Charge was filed on March 20, 2019. Consequently, for the charge to be timely, the alleged adverse employment action on which the charge was based must have occurred during the preceding 180 days (between September 21, 2018 and March 20, 2019).

Plaintiff argues that the March 2019 Charge was timely because it was filed within 180 days of the denial by Defendant's President on October 17, 2018 of Plaintiff's internal grievance, which itself was allegedly based on "each and every act of discrimination against [Plaintiff] … including the non-renewal of her contract." Pl.'s Mem. (Doc. 12) at 6. That is, Plaintiff contends that the denial of her grievance was the final act in "an on–going, continuing and related series of acts of discrimination[.]" Pl.'s Am. Compl. (Doc. 9) at ¶ 3. Plaintiff also alleges that the denial of her grievance was in retaliation for her filing of the September 2018 Charge. Id. at ¶ 49.

Defendant does not dispute that the March 2019 Charge was filed within 180 days of the denial of Plaintiff's internal grievance but argues that the denial on October 17, 2018 did not constitute adverse employment action. Def.'s Mem. (Doc. 11) at 11.

As noted, Plaintiff contends that her ADA claim may proceed under two (2) separate theories — retaliation and discrimination. See e.g., Pl.'s Resp. (Doc. 12) at 9 (arguing that the denial of Plaintiff's grievance in October 2018 was the last act of discrimination by Defendant and was also in retaliation for Plaintiff having filed the September 2018 Charge).

### i. Plaintiff's Retaliation Theory

The First Amended Complaint indicates, and the parties appear to agree, that Plaintiff's employment with Defendant ended prior to the denial of her grievance on October 17, 2018. See Def.'s Mem (Doc. 11) at 10-11; Pl.'s Resp. (Doc. 12) at 7.

A former employee may bring a retaliation claim under Title VII for post-employment conduct. See Ream v. Pennsylvania Dep't of Human Servs./Polk Ctr., No. 1:16-CV-173 (BJR), 2017 WL 5626197, at *3 (W.D. Pa. Nov. 22, 2017), aff'd sub nom Ream v. Pennsylvania Dep't of Human Servs., Polk Ctr., 738 F. App'x 83 (3d Cir. 2018) (citing Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997)) ("The anti-retaliation provisions of Title VII provide former employees with a legal recourse against post-employment retaliation."); see also Haburn v. Petroleum Marketers, Inc., No. CIV. A. 707CV00240, 2007 WL 4269064, at *5, n.6 (W.D. Va. Nov. 29, 2007) ("The court notes that in *Robinson v. Shell Oil Co.*, 519 U.S. 337, 345-346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), the United

11

States Supreme Court held that post-employment retaliation against a former employee is actionable under Title VII.").

"In order to establish a *prima facie* case of post-employment retaliation, a plaintiff must establish three elements: (1) the plaintiff engaged in protected activity; (2) the employer took an adverse employment action against the employee; and (3) there was a causal connection between plaintiff's participation in the protected activity and the adverse employment action." Ream, 2017 WL 5626197, at *3 (W.D. Pa. Nov. 22, 2017).

In view of the "almost uniform practice of courts in considering the authoritative body of Title VII case law when interpreting the comparable provisions of other federal statutes," Darveau v. Detecon, Inc., 515 F.3d 334, 342 (4th Cir. 2008), this Memorandum will use the same standards in analyzing Plaintiff's ADA claim. Id. (applying Title VII standard in the context of post-employment retaliation claim under Fair Labor Standards Act).

Here, Defendant argues that Plaintiff's retaliation claim fails the second element because the denial of Plaintiff's internal grievance did not constitute an adverse employment action. Def.'s Mem. (Doc. 11) at 10. Plaintiff counters that the denial of a grievance by Defendant's President "is harmful to an employee and would dissuade a reasonable employee from making or supporting an initial charge or charges of discrimination." Pl.'s Am. Compl. (Doc. 9) at ¶ 51; see Pl.'s Resp. (Doc. 12) at 11.

"An employment action is adverse in the context of a retaliation claim if it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" McNeill v. Bd. of Governors of the Univ. of N. Carolina, 837 F. Supp. 2d 540, 543 (M.D.N.C. 2011) (quoting Burlington, 548 U.S. at 68 (2006)). Consequently, "[t]he key inquiry in a post-employment retaliation claim is whether the defendant's actions were 'materially adverse' and 'could well dissuade a reasonable worker from making or supporting a charge' that their employer is violating, or has violated, the statute's substantive provisions." Baclawski v. Fioretti, No. 3:15-CV-417-DCK, 2018 WL 345117, at *6 (W.D.N.C. Jan. 9, 2018)(citing Brach v. Conflict Kinetics Corp., No. 1:16-CV-978, 2017 WL 3267961, at *20 (E.D. Va. July 31, 2017) and Darveau v. Detecon, Inc., 515 F.3d 334, 343 (4th Cir. 2008)).

Here, the factual allegations in the First Amended Complaint do not indicate that a reasonable employee in Plaintiff's position would have found the denial of the grievance to have been materially adverse such that the employee might have been dissuaded from making or supporting a charge of discrimination. Though Plaintiff contends generally that the denial of her grievance in October 2018 was the final event in a series of discriminatory acts, the facts as alleged do not indicate that Defendant's denial of the final

13

grievance was a retaliatory act or that her grievance was handled other than in the ordinary course.[6]

That is not to say that conduct relating to internal grievances could never constitute adverse employment action; research has revealed cases where such conduct has been found sufficient to support a retaliation claim. See <u>Twisdale v. Paulson</u>, 595 F. Supp. 2d 686 (S.D.W. Va. 2009)(summary judgment denied where there "were several violations of the time periods set forth in the five steps of grievance procedure in the employee handbook, and the entire grievance procedure took significantly and inexcusably longer" than stated in

---

[6] In its reply, Defendant appears to suggest that a subjective standard governs this issue and that since Plaintiff herself was not dissuaded from filing a charge with the EEOC (she submitted the March 2019 Charge), her claim is effectively foreclosed. Doc. 13 at 4 ("if this action did not deter Plaintiff, it will not deter others"). However, "[t]he standard applied to assess whether an action would dissuade an employee from engaging in protected activity is an objective one and does not encompass a plaintiff's 'unusual subjective feeling.'" <u>Eldridge v. Rochester City Sch. Dist.</u>, 968 F. Supp. 2d 546, 560 (W.D.N.Y. 2013)(quoting <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68–69, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). While Plaintiff's subjective reaction may inform the objective analysis it is not fatal to her claim. See <u>Twisdale v. Paulson</u>, 595 F. Supp. 2d 686, 699 (S.D.W. Va. 2009)(finding that plaintiff's engagement in protected activity after the delay in processing his grievance did not cause his claim to fail because the "material adversity" standard is objective, not subjective); <u>Brach v. Conflict Kinetics Corp.</u>, No. 1:16-CV-978, 2017 WL 3267961, at *20 (E.D. Va. July 31, 2017) ("To state the obvious, Brach himself was not dissuaded from pursuing his allegations in this case . . . . Nor is there a shred of evidence that an objectively reasonable person in a similar situation to Brach's would have been so dissuaded.").

14

the handbook); see also Cummings v. Lumbee Tribe of N. Carolina, 590 F. Supp. 2d 769 (E.D.N.C. 2008)(motion to dismiss denied where employee was suspended for writing a grievance on her own behalf and assisting a co-worker in filing a similar grievance). Such authorities, however, are distinguishable as no factual allegations have been provided here to indicate that the denial of Plaintiff's grievance was in retaliation for the filing of the September 2018 Charge.

Consequently, under these circumstances, Defendant's denial of Plaintiff's grievance on October 17, 2018 did not constitute an unlawful employment action sufficient to support a retaliation claim under the ADA.

### ii. Plaintiff's Discrimination Theory

The ADA "prohibits a covered employer from discriminating 'against a qualified individual with a disability because of the disability of such individual.'" E.E.O.C. v. Stowe–Pharr Mills, Inc., 216 F.3d 373, 377 (4th Cir.2000) (quoting 42 U.S.C. § 12112(a)). "To establish a claim for disability discrimination under the ADA, a plaintiff must prove '(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that her employer discharged her (or took other adverse employment action) because of her disability." Chamberlain v. Securian Fin.

Grp., Inc., 180 F. Supp. 3d 381, 391 (W.D.N.C. 2016)(citing Jacobs v. N.C. Admin. Office of the Courts, 780 F.3d 562, 572 (4th Cir.2015)).[7]

In this case, while the First Amended Complaint does not provide the specific date on which Plaintiff's employment ceased, the parties, as noted above, appear to agree that Plaintiff was not employed on October 17, 2018 when her final grievance was denied.

Unlike retaliation claims, discrimination claims may not be supported by acts of post-employment discrimination. Bryant v. Covina-Valley Unified Sch. Dist., No. CV171274PSGAJWX, 2018 WL 6016924, at *3 (C.D. Cal. Jan. 10, 2018) (citing Burlington, 548 U.S. at 64) (" . . .the Supreme Court has held that while Title VII's *antidiscrimination* provisions are limited to 'discriminatory actions that affect the terms and conditions of employment' and are thus not applicable to post-employment discrimination, its antiretaliation provision is not so limited.")(emphasis in original). Therefore, the post –

---

[7] A "qualified individual with a disability" is defined as one "who, with or without reasonable accommodation, can perform the essential functions" of his job. Swanson v. Med. Action Indus., Inc., 343 F. Supp. 2d 496, 499 (W.D.N.C. 2004)(citing 42 U.S.C. § 12111(8). The question of whether Plaintiff is a qualified individual for all or part of her ADA claim has not been raised and therefore is not addressed by this Memorandum. See e.g., Dawson v. Baltimore Cty., No. JFM-16-692, 2016 WL 4089562, at *2 (D. Md. Aug. 1, 2016) ("While the Fourth Circuit has not weighed in on the issue, other circuits are split as to whether a plaintiff who was unable to perform essential job functions at the time of an adverse employment action is a qualified individual that can bring suit under § 12112(a) of the ADA.").

16

Case 1:19-cv-00251-MR-WCM   Document 14   Filed 05/05/20   Page 16 of 20

employment denial by Defendant of Plaintiff's internal grievance cannot serve as the basis for her ADA discrimination claim.

Further, even if it is assumed that Plaintiff was employed until shortly before October 17, 2018, she has not identified any adverse employment actions that occurred during the period covered by the March 2019 Charge. "[A]dverse employment actions under ADA discrimination [claims] are analyzed under the Title VII standard." Haddaway v. Baltimore Cty., Maryland, No. CV BPG-18-1903, 2020 WL 1043310, at *5 (D. Md. Mar. 4, 2020)(citing Fox v. Gen. Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001). Specifically, an adverse employment action is defined as one that "adversely affects the terms, conditions, or benefits of the plaintiff's employment." Id. (citing Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007)). Adverse employment actions occur when an employer discriminates against an employee in making an "ultimate employment" decision, such "hiring, granting leave, discharging, promoting and compensating." Tangires v. Johns Hopkins Hosp., 79 F. Supp. 2d 587, 599 (D. Md.), aff'd, 230 F.3d 1354 (4th Cir. 2000)(applying Title VII's "ultimate employment" standard to plaintiff's ADA discrimination claim to assess whether an adverse employment action occurred); see Williams v. Brunswick Cnty. Bd. of Educ., 725 F.Supp.2d 538, 547 (E.D.N.C.2010) aff'd, 440 F. App'x 169 (4th Cir.2011) (applying Title VII's

"ultimate employment" action standard in determining whether plaintiff sufficiently pled an adverse employment action in ADA discrimination claim).

Plaintiff alleges that the grievance she attempted to file with the Board of Trustees concerned "all of the discriminatory and retaliatory actions set out above," Doc. 9 at ¶ 47, but beyond this conclusory statement, the First Amended Complaint does not provide factual allegations regarding specific acts or omissions that occurred during the 180 days prior to the filing of the March 2019 Charge (between September 21, 2018 and March 20, 2019) and that could be considered adverse employment action.

Plaintiff's March 2019 Charge was therefore correctly deemed untimely by the EEOC and her ADA discrimination claim is subject to dismissal.

### B. State law claims

Under the doctrine of supplemental jurisdiction, "federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1995). Courts may consider "the convenience and fairness to the parties, existence of any underlying issues of federal policy, comity, and considerations of judicial economy" in deciding whether to exercise supplemental jurisdiction. Id. at 110.

Should Plaintiff's ADA claim be dismissed as recommended, no federal claims or issues will remain for the Court to decide. Therefore, the undersigned

18

will recommend that the District Court decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## V. Recommendation

For the reasons stated, the undersigned **RECOMMENDS:**

1. That Defendant's Motion to Dismiss (Doc. 10) be **GRANTED** with respect to Plaintiff's ADA claim and that such claim be **DISMISSED WITH PREJUDICE;** and

2. That the District Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Plaintiff's state law claims and that such claims be **REMANDED** to the Superior Court of Henderson County, North Carolina.

Signed: May 5, 2020

*W. Carleton Metcalf*
W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).